## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**THOMAS FICK ET AL.**                                 **CIVIL ACTION**
    **Plaintiffs**

**VERSUS**                                             **No. 13-6608**

**EXXON MOBIL CORPORATION,**                           **SECTION "E"**
    **Defendant**

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment.[1] For the reasons set forth below, Defendant's motion is **DENIED**.

## BACKGROUND

This is a personal injury case. Plaintiffs Thomas Fick and Antoine Gregoire[2] (collectively, "Plaintiffs") allege that, while shrimping in Bayou Jean La Croix Field in Terrebonne Parish, Louisiana, on October 23, 2o13, Fick was operating a Carolina Skiff boat in a navigable waterway when the boat struck a "pipe to the well owned by Exxon."[3] Fick and Gregoire allege they sustained severe injuries as a result of the allision.[4] On December 9, 2013, Fick filed this suit against Exxon Mobil Corporation ("Exxon").[5] Plaintiffs allege that Exxon was negligent and seek compensatory and punitive damages under the general maritime law.[6]

---

[1] R. Doc. 64.
[2] Plaintiff Antoine Gregoire was named in the Third Amended Complaint. R. Doc. 38.
[3] R. Doc. 1 at ¶ IV; R. Doc. 64-17 at 2; R. Doc. 69 at 2.
[4] *Id.*
[5] R. Doc. 1. The Amended Complaint, filed June 17, 2014, named Gulf South Pipeline Company, L.P. ("Gulf South") as an additional defendant. R. Doc. 10. Plaintiffs filed a motion to dismiss Gulf South, however, on March 12, 2015, which the Court granted. R. Docs. 33, 36.
[6] R. Doc. 1 at ¶¶ V–VII; R. Doc. 38.

1

On November 25, 2015, Exxon filed a motion for summary judgment.[7] Exxon argues in its motion that it does not own the object Plaintiffs struck and the object is not associated with Exxon such that it could be held liable for the alleged allision.[8] Plaintiffs filed a response in opposition to Exxon's motion on December 8, 2015.[9] Exxon filed a reply in support of its motion on December 18, 2015,[10] and Plaintiffs filed a surreply on December 23, 2015.[11]

## STANDARD OF LAW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] "An issue is material if its resolution could affect the outcome of the action."[13] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[14] All reasonable inferences are drawn in favor of the non-moving party.[15] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[16] Inadmissible evidence cannot be considered on a summary judgment motion.[17] "The

---

[7] R. Doc. 64.
[8] *Id.*
[9] R. Doc. 69.
[10] R. Doc. 80.
[11] R. Doc. 82.
[12] Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[13] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[14] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[15] *McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 288 (5th Cir. 2008).
[16] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[17] *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004).

admissibility of summary judgment evidence is subject to the same rules of admissibility applicable to a trial."[18]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[19] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[20]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[21] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[22] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[23] "[U]nsubstantiated

---

[18] *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir. 1995).

[19] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

[20] *Celotex*, 477 U.S. at 322–24.

[21] *Id.* at 331–32 (Brennan, J., dissenting).

[22] *See id.* at 332.

[23] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce

assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[24]

## ANALYSIS

To establish that Exxon is liable for the allision, Plaintiffs "must prove that the pipe was owned, maintained, controlled, or placed in position" by Exxon.[25] Plaintiffs cannot survive summary judgment without some evidence linking Exxon to the pipe; establishing that Exxon's operations were closest to the allision site is insufficient.[26]

Exxon argues Plaintiffs have presented no evidence showing that Exxon owned, placed, or maintained the line Plaintiffs struck.[27] The allision occurred in an area adjacent to an oil well field in which Exxon operated through 1983,[28] but Exxon maintains, and Plaintiffs do not dispute,[29] that the only asset Exxon ever owned in the vicinity of the allision site was the now plugged and abandoned D-15 well.[30] Exxon's corporate deponent testified that Exxon (formerly and at that time, Humble Oil & Refining Co.) leased the

---

additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[24] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[25] *Guidry v. Apache Corp. of Delaware*, 236 F. App'x 24, 25 (5th Cir. 2007); *Creppel v. Shell Oil Co.*, 738 F.2d 699, 702 (5th Cir. 1984). *See also Parker v. Arco Oil & Gas Co.*, No. 07-5915, 2007 WL 4299426, at *2 (E.D. La. Dec. 6, 2007) ("A duty exists when the lessee owns the obstructions, has placed them, or maintains them under its control.").
[26] *Guidry*, 236 F. App'x at 25.
[27] R. Doc. 64-3 at 6.
[28] R. Doc. 64-14 at 2–3. Plaintiffs do not dispute this. R. Doc. 69 at 6.
[29] Plaintiffs agree that the only asset Exxon ever owned within 100 feet of the allision site is the D-15 well. R. Doc.69-8 at ¶ 15.
[30] *See* R. Doc. 64-2 at ¶ 15; R. Doc. 69-8 at ¶ 15.

land from Louisiana Land and Exploration Company ("LL&E") in 1950.[31] The parties agree that the lease between Humble Oil & Refining Co. and LL&E was "completely released back to LL&E" in June 1983.[32] Exxon maintains that it has not operated any assets in Bayou Jean La Croix Field since 1983[33] and that it does not own, maintain, control, or operate—and had no duty to remove—the object Plaintiffs struck.[34]

Plaintiffs attach to their opposition a sworn affidavit from Thomas Picou. In his affidavit, Picou states that, while he was operating his vessel in Bayou Jean La Croix on October 24, 2013, his vessel struck the same object that Plaintiffs struck.[35] Picou also states that John Dill, a claim supervisor for ExxonMobil Risk Management, Inc.,[36] told Picou that the object he struck "was Exxon's equipment which was associated with a Well #15."[37] According to the affidavit, Exxon sent Picou a check to compensate him for the damage to his boat as a result of his allision with the object.[38] Thus, if admissible, Picou's affidavit would create a genuine issue of material fact as to whether Exxon owned, operated, maintained, put in place, or was otherwise responsible for the object Plaintiffs struck.

Exxon argues Picou's affidavit is inadmissible hearsay and thus is not competent summary judgment evidence.[39] Exxon also argues that Federal Rule of Evidence 408 renders inadmissible Picou's affidavit concerning any settlement with Exxon. As the party

---

[31] R. Doc. 64-14 at 3.
[32] R. Doc. 64-2 at ¶ 4; R. Doc. 69-8 at ¶ 4. For the Release of Lease document, *see* R. Doc. 64-13.
[33] *See* R. Doc. 64-3 at 19; R. Doc. 64-14 at 2 ("We've not operated in that area since 1983."); R. Doc. 64-14 at 3 ("Q Until 1983. And at which time, they abandoned the site to or back to—abandoned the lease back to LL&E? A Correct."); R. Doc. 69-4 at 5 (same).
[34] R. Doc. 64-3 at 17–25.
[35] R. Doc. 69-5 at 1–2.
[36] R. Doc. 80-2 at ¶ 2.
[37] R. Doc. 69-5 at 1.
[38] *Id.* at 2.
[39] R. Doc. 80 at 4.

objecting to the admission of the affidavit, Exxon bears the burden of proving the preliminary facts required to show its inadmissibility.[40]

Under Rule 408, evidence of a statement made during compromise negotiations "about the claim" is inadmissible to prove or disprove the validity of a disputed claim.[41] The rule expressly provides for exceptions, noting that evidence of statements made during compromise negotiations may be admitted "for another purpose."[42] This Court has broad discretion in determining whether to admit evidence related to a compromise or settlement for another purpose.[43] Indeed, "[e]vidence coming out of settlement negotiations . . . [has] been admitted by courts for additional purposes other than establishing liability, including for purposes of rebuttal, for purposes of impeachment, to show knowledge and intent, to show a continuing course of reckless conduct, and to prove estoppel."[44]

Moreover, several courts have determined that the rule does not apply to evidence regarding the settlement of a claim different from the one being litigated,[45] though "even the circuits that construe Rule 408 narrowly view evidence of third party settlements skeptically."[46]  The 1972 advisory committee notes to Rule 408 state as follows:

---

[40] *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 295 (5th Cir. 2010).

[41] FED. R. EVID. 408(a)(2).

[42] *Id.*

[43] *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2012 WL 395048, at *3 (E.D. La. Feb. 7, 2012) ("Whether evidence should be admitted for another purpose is within the discretion of the district court; the decision to admit or exclude evidence preferred for other purposes will be reversed only for an abuse of that discretion."); *U.S. Aviation Underwriters, Inc. v. Olympia Wings, Inc.*, 896 F.2d 949, 956 (5th Cir. 1990); *Belton v. Fibreboard Corp.*, 724 F.2d 500, 505 (5th Cir.1984).

[44] *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 689 (7th Cir. 2005).

[45] *Tendeka, Inc. v. Glover*, No. 13-1764, 2015 WL 2212601, at *20 (S.D. Tex. May 11, 2015) ("Rule 408 does not prohibit all uses of settlement offers. Instead, Rule 408 prevents a party from proving or disproving the validity of 'a disputed claim' by introducing evidence of 'valuable consideration in compromising or attempting to compromise *the claim.*'" (quoting FED. R. EVID. 408) (emphasis in original)); *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 769–70 (10th Cir. 1997); *Dahlgren v. First Nat. Bank of Holdrege*, 533 F.3d 681, 700 (8th Cir. 2008).

[46] *Dahlgren*, 533 F.3d at 699.

> While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto. This latter situation will not, of course, ordinarily occur except when a party to the present litigation has compromised with a third person.[47]

As the Tenth Circuit explained, "Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated, though admission of such evidence may nonetheless implicate the same concerns of prejudice and deterrence of settlements which underlie Rule 408."[48] Another section of this Court explained that the underlying policy of Rule 408, which is intended to encourage the compromise of disputes by ensuring freedom of communication with respect to settlement negotiations, "applies in situations, as here, in which a plaintiff attempts to introduce evidence of a settlement between the same defendant but a different plaintiff."[49] The court also stated, however, that Rule 408 "may be used only to exclude settlement documents that are introduced to prove or disprove the liability or the amount of the claim *that was the subject of the compromise.*"[50]

Here, Plaintiffs seek to introduce Picou's affidavit not to prove or disprove Exxon's liability regarding Picou's claim but rather to dispute Exxon's contention that it has no connection with the object Plaintiffs struck. Therefore, Rule 408 does not bar its admissibility.

Exxon also contends Picou's affidavit is hearsay and thus inadmissible under Rule 802.[51] Hearsay is a statement that "(1) the declarant does not make while testifying at the

---

[47] FED. R. EVID. 408 advisory committee's note.
[48] *Towerridge*, 111 F.3d at 769–70 (internal citations omitted).
[49] *Safford v. St. Tammany Parish Fire Protection Dist. No. 1*, No. 02-0055, 2003 WL 1873907, at *5 (E.D. La. April 11, 2003).
[50] *Id.* (emphasis added).
[51] R. Doc. 80 at 4.

current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[52] A statement is not hearsay, however, when it is offered against an opposing party and was made by a person whom the party authorized to make a statement on the subject or was made by the party's employee on a matter within the scope of that relationship and while it existed.[53]

Picou states in his affidavit that John Dill, who was "with Exxon Mobil Corporation," told Picou that the object he struck "was Exxon's equipment which was associated with a Well #15."[54] In his declaration, Dill concedes he is employed by ExxonMobil Risk Management, Inc. as a claim supervisor and that he was the assigned adjuster for Picou's claim.[55] Therefore, the statement was allegedly made by Exxon's employee on a matter within the scope of his relationship with Picou as the adjuster assigned by Exxon to Picou's claim. Accordingly, the statement is not hearsay, as it is offered against Exxon.[56]

The Court determines that Picou's affidavit is admissible. Dill denies that he told Picou the object he struck was associated with the D-15 well.[57] Picou's affidavit, in which he swears an Exxon employee admitted that the object was Exxon's, creates a genuine issue of material fact as to whether Exxon owned, operated, maintained, controlled, put in place, or was otherwise responsible for the object that Plaintiffs struck.

Exxon argues in the alternative that, even if Exxon owned the pipe Plaintiffs struck, it did not breach any duties to Plaintiffs because Exxon was under no duty to

---

[52] FED. R. EVID. 801(c).
[53] FED. R. EVID. 801(d)(2).
[54] R. Doc. 69-5 at 1.
[55] R. Doc. 80-2 at ¶¶ 2–3.
[56] FED. R. EVID. 801(d)(2).
[57] R. Doc. 80-2 at ¶ 7.

remove the pipe or monitor the field after the lease was released back to LL&E in 1983.[58] In its memorandum,[59] Exxon cites several statutes and administrative code articles that empower state officials to require parties to undertake certain oilfield restoration activities and provide penalties for failure to comply with required restoration and removal procedures.[60] Exxon maintains, "Had the State determined that ExxonMobil needed to further act, it would have provided notice in the 30 or so years prior to the accident. It never did; strongly suggesting ExxonMobil had satisfied its obligations under the lease, the release and Statewide Order No. 29-B on the day of the incident."[61]

Whether Exxon satisfied its obligations under the lease and under Louisiana regulations has no bearing on whether Exxon can be held liable in tort for Plaintiffs' allision. Exxon fails to establish as a matter of law, or cite any case law to show, that the oilfield restoration and removal laws and regulations to which it refers affect the standard of care in a negligence action.[62] Courts have made clear that "[a] duty exists when the lessee owns the obstructions, has placed them, or maintains them under its control."[63]

---

[58] R. Doc. 64-3 at 21–25.

[59] *Id.* at 22–25.

[60] *See, e.g.,* La. Rev. Stat. §§ 30:89, 30:92, 30:94.

[61] R. Doc. 64-3 at 23.

[62] *Cf. Creppel*, 738 F.2d at 702. The court in *Creppel* discussed a regulation requiring lessees of lands on the Outer Continental Shelf to "maintain all equipment in a safe condition . . . for the health and safety of all persons[] and for the preservation and conservation of property and the environment" and to "immediately take all necessary precautions to control, remove, or otherwise correct any hazardous oil and gas accumulation or other health, safety, or fire hazard." *Id.* at 701–02. The court explained, "A breach of the regulation provides no federal civil cause of action" and that the regulation established "no special standard of care in a negligence action." *Id.* at 702.

[63] *Parker*, 2007 WL 4299426, at *2 ("The court in [*Creppel*] held that the mineral lessee had no duty to clear its maritime leases of all obstructions simply because it had notice of them. A duty exists when the lessee owns the obstructions, has placed them, or maintains them under its control. Although it was arguable that circumstantial evidence existed for the jury to have found that the mineral lessee owned, maintained, placed, or controlled the pipe in the leased area, the trial court did not instruct the jury that such a finding was a prerequisite to holding the mineral lessee liable."). *See also Creppel*, 738 F.2d at 702 (finding only that a mineral lessee does not have a duty "to police the waters covered by its lease or to take steps to remove obstructions which *it does not own*, has not placed there, or does not maintain or control" (emphasis added)).

Picou's affidavit raises a genuine issue of material fact as to whether Exxon owned, operated, controlled, maintained, or put into place the object Plaintiffs hit. Accordingly, summary judgment is not appropriate.

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Exxon's Motion for Summary Judgment is **DENIED**.

**New Orleans, Louisiana, this 7th day of January, 2016.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**