UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THOMAS FICK ET AL.**<br>    Plaintiffs | **CIVIL ACTION** |
| **VERSUS** | **No. 13-6608** |
| **EXXON MOBIL CORPORATION,**<br>    Defendant | **SECTION "E"** |

## ORDER AND REASONS

Before the Court is Plaintiffs' motion *in limine* to exclude the testimony of Defendant's proposed expert Dennis K. Manuel.[1]

## BACKGROUND

This is a personal injury case. Plaintiffs Thomas Fick and Antoine Gregoire[2] (collectively, "Plaintiffs") allege that, while shrimping in Bayou Jean La Croix Field in Terrebonne Parish, Louisiana, on October 23, 2o13, Fick was operating a Carolina Skiff boat in a navigable waterway when the boat struck a "pipe to the well owned by Exxon."[3] Fick and Gregoire allege they sustained severe injuries as a result of the allision.[4] On December 9, 2013, Fick filed this suit against Exxon Mobil Corporation ("Defendant").[5] Plaintiffs allege that Defendant was negligent and seek compensatory and punitive damages under the general maritime law.[6]

---

[1] R. Doc. 83.
[2] Plaintiff Antoine Gregoire was named in the Third Amended Complaint. R. Doc. 38.
[3] R. Doc. 1 at ¶ IV; R. Doc. 64-17 at 2; R. Doc. 69 at 2.
[4] *Id.*
[5] R. Doc. 1. The Amended Complaint, filed June 17, 2014, named Gulf South Pipeline Company, L.P. ("Gulf South") as an additional defendant. R. Doc. 10. Plaintiffs filed a motion to dismiss Gulf South, however, on March 12, 2015, which the Court granted. R. Docs. 33, 36.
[6] R. Doc. 1 at ¶¶ V–VII; R. Doc. 38.

1

On December 29, 2015, Plaintiffs filed this motion *in limine* to exclude the testimony of Defendant's proposed expert Dennis K. Manuel.[7] Defendant filed a response in opposition on January 19, 2016.[8] Plaintiffs filed a reply memorandum on January 25, 2016.[9]

## LAW AND ANALYSIS

Plaintiffs seek to exclude the testimony of Dennis K. Manuel for three reasons. First, Plaintiffs argue Manuel's educational background does not relate to oil and gas surveying.[10] Second, Plaintiffs note that Manuel's "entire professional portfolio consists only of Exxon work" and contend that Manuel's testimony and opinions "will be extremely biased toward Exxon, lack objectivity and lack reliability."[11] Finally, Plaintiffs argue that Manuel's opinions contained in his report "lack sufficient facts or data to support them."[12]

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[13]

Courts, as "gatekeepers," are tasked with making a preliminary assessment whether expert testimony is both reliable and relevant.[14] The Court has broad latitude in making

---

[7] R. Doc. 83.
[8] R. Doc. 96.
[9] R. Doc. 100.
[10] R. Doc. 83-1 at 2.
[11] *Id.* at 2–3.
[12] *Id.* at 3.
[13] FED. R. EVID. 702.
[14] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)).

such expert testimony determinations.[15] The party seeking to offer expert testimony bears the burden of establishing, by a preponderance of the evidence, that "(1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable."[16] The Court will determine whether Manuel is qualified based on his report,[17] his resume,[18] and his declaration,[19] to the extent the declaration describes his credentials that would qualify him as an expert in the relevant field.

In their motion, Plaintiffs identify six opinions Manuel gives in his report: (1) the location of the D-15 well; (2) the location of the facility that would have received production from the D-15 well; (3) the route of the D-15 well flow line; (4) the likelihood that any one of the multiple pipeline segments near Plaintiffs' allision coordinates were at one time associated with the D-15 well; (5) the likelihood that flow lines or pipelines now in the vicinity of the D-15 well were scattered by hurricane surge tides from another facility; and (6) the likelihood that the line marked by Plaintiffs was associated with the D-15 well.[20]

In Defendant's opposition to the motion *in limine*, Defendant states, "While it is not clear if Plaintiff has actually challenged Manuel's qualifications for opining on where the D-15 well was located, if this challenge has been made, Manuel's Declaration demonstrates that he is qualified to do so, especially when considering the well's location

---

[15] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151–53 (1999).
[16] *Motio, Inc. v. BSP Software, LLC*, No. 4:12-CV-647, 2016 WL 105299, at *1 (E.D. Tex. Jan. 8, 2016) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590–91 (1993)). *See also Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002); *AMW Sports, LLC v. State Farm Fire and Cas. Co.*, No. 10-651, 2012 WL 39380, at *1 (M.D. La. Jan. 9, 2012) ("Plaintiffs, the proponents of the expert evidence at issue, have the burden of demonstrating that their expert is qualified to testify in the field that he is offered and that his opinions are both reliable and relevant.").
[17] R. Doc. 83-2; R. Doc. 96-2; R. Doc. 96-3.
[18] R. Doc. 83-3.
[19] R. Doc. 96-1.
[20] R. Doc. 83-1 at 1.

is not in dispute."[21] The parties do not dispute the location of the well, the first opinion in Manuel's report. As a result, no expert testimony is needed on this point.

Manuel does not offer an opinion as to the location of the facility that would have received production from the D-15 well, Opinion 2 above, or as to the route the flowline from the D-15 well would have followed while in use, Opinion 3 above.[22] Therefore, the Court need not address Opinions 2 and 3 identified by Plaintiffs.

Thus, Plaintiffs' objections to Manuel's opinions regarding the following are moot: (1) the location of the D-15 well; (2) the location of the facility that would have received production from the D-15 well; and (3) the route of the D-15 well flow line. Plaintiffs' objections to Manuel's opinions regarding the following remain at issue: (4) the likelihood that any one of the multiple pipeline segments near Plaintiffs' allision coordinates were at one time associated with the D-15 well; (5) the likelihood that flow lines or pipelines now in the vicinity of the D-15 well were scattered by hurricane surge tides from another facility; and (6) the likelihood that the line marked by Plaintiffs was associated with the D-15 well.

With respect to Opinion 4, Manuel concludes that, more probably than not, only one line in the vicinity of Plaintiffs' allision site was associated with the D-15 well.[23] With respect to Opinion 5, Manuel concludes that the other lines in the vicinity were, more probably than not, scattered by hurricane surge tides from a nearby orphaned facility,

---

[21] R. Doc. 96 at 6.
[22] R. Doc. 83-2; R. Doc. 96 at 6–7.
[23] R. Doc. 83-2 at 2–3. Specifically, Manuel notes that one line segment, "nearest the Humble D 15 well, more probable than not, belongs to that well." *Id.* at 3. That line segment, Manuel states, is "the only line segment, more probable than not, appearing to belong to the Humble D 15." *Id.*

well, and pipe rack.[24] With respect to Opinion 6, Manuel concludes that, more probably than not, the line Plaintiffs struck was not associated with the D-15 well but was scattered from a nearby facility by hurricane surge tides.[25] Manuel ultimately concludes in his report:

> More probable than not, the majority of line segments found near the Humble D 15 well slip were distributed by hurricane tides. The capped line segment, more probable than not, is the terminal end of the Humble D 15 flow line (abandoned in place). This is the only line segment, more probable than not, appearing to belong to the Humble D 15 well. More probable than not, the additional line segments, all broken ended (including the segment marked by Mr[.] Fick), are hurricane tidal surge distribution from the nearby orphaned facility, adjacent well and pipe rack.[26]

The Court finds Manuel lacks the education, experience, and expertise necessary for him to express expert opinions on these matters. Manuel holds a bachelor's degree in general science and a master's degree in zoology.[27] Manuel worked as a high school science teacher for six months and then as a fishery biologist for nine years.[28] He began working for ExxonMobil in 1982, where he worked as an operator and engineering technician.[29] As an engineering technician, he "was often responsible for designing Corps of Engineer . . . wetlands permit plats," which "required hiring a surveying company to survey the field so [he] could consider and take into account the wetland features of the field, around existing oil and gas assets."[30] Manuel states that, in that capacity, he "analyzed and interpreted survey results for over fifteen years."[31] After retiring in 2006, Manuel worked as a consultant for ExxonMobil, his services for which "included but were

---

[24] *Id.* "The multiple line segments . . . , including the line segment marked by Mr[.] Fick," and thus the line Plaintiffs struck with their boat, "more probable than not are line segments scattered from the orphaned facility, well and pipe rack as a result of hurricane surge tides of recent years." *Id.*
[25] *Id.* at 3.
[26] *Id.*
[27] R. Doc. 83-3; R. Doc. 96-1 at ¶¶ 3, 4.
[28] R. Doc. 83-3.
[29] *Id.*
[30] R. Doc. 96-1 at ¶¶ 7–8.
[31] *Id.* at ¶ 8.

5

not limited to the investigation of various field abandonment issues."[32] Although Manuel is undoubtedly familiar with surveys, his resume, declaration, and report fail to establish that Manuel himself is a surveyor or that he has specialized training, knowledge, or experience in surveying. Manuel states in his report that he "spent [two days] on site with a C.H. Fenstermaker survey crew,"[33] but the Court sees no indication a survey was performed. Manuel had no survey on which he could rely. Land surveyors are highly trained professionals who are licensed by the State. Surveyors are regularly allowed to testify regarding surveys, but lay witnesses are not. Manuel is not a licensed surveyor. Neither does Manuel have training, knowledge, or experience regarding hurricanes or how hurricanes move pipes around in a body of water. Neither is Manuel an expert in hydrology.

      Further, an expert witness's findings must have "a sufficiently reliable scientific or technical basis."[34] Manuel's report fails to provide any scientific or technical basis underlying his conclusions. Manuel's conclusions amount to speculation. He fails to describe in his report any reliable principles or methods on which he relies. Although he states he went to the site with a survey crew and reviewed aerial photos and survey data files,[35] this is not sufficient to establish a scientific or technical basis for his opinions. Manuel tries to provide additional support in his declaration to supplement the findings contained in his report.[36] Additional support in Manuel's declaration, however, cannot be

---

[32] *Id.* at ¶ 10.
[33] R. Doc. 83-2 at 1.
[34] *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 993 (5th Cir. 1997).
[35] R. Doc. 83-2 at 1–2.
[36] *See* R. Doc. 96-1 at 4–5.

considered by the Court, as that would be akin to the Court's considering an untimely supplemental report.[37]

The Court finds that Defendant has failed to establish by a preponderance of the evidence that Manuel is qualified by scientific, technical, or other specialized knowledge to testify as an expert in this matter. Defendant has also failed to establish that Manuel's testimony is reliable or based on sufficient scientific or technical basis and expertise to support the findings of his report.[38]

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs' motion to exclude the testimony of Dennis K. Manuel is **GRANTED**.

**New Orleans, Louisiana, this 1st day of February, 2016.**

*[signature: Susie Morgan]*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[37] *See* R. Doc. 91. The Court struck from the record Plaintiffs' supplemental reports provided beyond the Plaintiffs' November 2, 2015, deadline. *Id.* Rule 26(a)(2) requires expert reports to be exchanged "at the time[] . . . that the court orders." FED. R. CIV. P. 26(a)(2)(D). Defendant's expert reports were due December 15, 2015. *See* R. Doc. 63 at 2. "A district court has the discretion to exclude expert testimony and evidence if a party does not produce expert reports within the appropriate deadlines." *Mike Hooks Dredging Co. v. Eckstein Marine Serv., Inc.*, No. 08-03945, 2011 WL 3270855, at *2 (E.D. La. Aug. 1, 2011) (citing *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996)). *See also Johnson v. Samsung Elecs. Am., Inc.*, No. 10-1146, 2011 WL 4704203, at *2 (E.D. La. Oct. 4, 2011) ("It is well established that a district court has broad discretion to enforce a scheduling order issued pursuant to Rule 16(b) of the Federal Rules of Civil Procedure."); *Winfun v. Daimler Chrysler Corp.*, 225 F. App'x 772, 773 (5th Cir. 2007) ("We review a District Court's decision to strike an expert report for failure to meet a deadline under the deferential abuse of discretion standard. The District Court has broad discretion in discovery matters." (citations omitted) (internal quotation marks omitted)). The Court's scheduling order makes clear that deadlines "may be extended only by the Court upon timely motion filed in compliance with the Local Rules and upon a showing of good cause." R. Doc. 46 at 5. Defendant failed to file any motion requesting leave to provide Plaintiffs with supplemental reports past Defendants' December 15, 2015, deadline.

[38] The Court notes that with respect to Manuel's association with Exxon, Plaintiffs challenge his bias and objectivity. R. Doc. 83-1 at 2–3. Manuel's bias and objectivity are not a question of admissibility but go to the weight to be given to the expert and his testimony, a determination to be made by the trier of fact. *See Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1307 (5th Cir. 1991) ("The court must allow the jury to make credibility decisions and to decide what weight to afford a report's findings."). If Manuel were qualified to testify as an expert witness, the jury would determine the credibility of his testimony, which presumably would be subject to vigorous cross examination by Plaintiffs.