UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THOMAS FICK ET AL.**<br>    Plaintiffs | **CIVIL ACTION** |
| **VERSUS** | **No. 13-6608** |
| **EXXON MOBIL CORPORATION,**<br>    Defendant | **SECTION "E"** |

## ORDER AND REASONS

Before the Court are three motions *in limine* filed by Defendant, ExxonMobil Corporation, to exclude the testimony of Plaintiff Thomas Fick's proffered experts.[1] Defendant's first motion *in limine* seeks exclusion of Fick's proffered economic loss expert Shael Wolfson.[2] Defendant's second motion *in limine* seeks exclusion of Fick's proffered future medical expense expert Bobby S. Roberts, B.S., M.Ed.[3] Defendant's third motion *in limine* seeks exclusion of Fick's proffered expert, Andrew S. Nolte, regarding cost of repairs to Fick's vessel.[4] Plaintiff, Thomas Fick, opposes these motions.[5]

## BACKGROUND

This is a personal injury case. Plaintiffs, Thomas Fick and Antoine Gregoire,[6] allege that, while shrimping in Bayou Jean La Croix Field in Terrebonne Parish, Louisiana, on October 23, 2013, Fick was operating a Carolina Skiff boat in a navigable waterway when the boat struck a "pipe to the well owned by Exxon."[7] Fick and Gregoire allege they sustained severe injuries as a result of the allision.[8] On December 9, 2013, Fick filed this

---

[1] R. Docs. 250, 251, 252.
[2] R. Doc. 250.
[3] R. Doc. 251.
[4] R. Doc. 252.
[5] R. Docs. 254, 255, 256.
[6] Plaintiff Antoine Gregoire was named in the Third Amended Complaint. R. Doc. 38.
[7] R. Doc. 1 at ¶ IV; R. Doc. 64-17 at 2; R. Doc. 69 at 2.
[8] *Id.*

1

suit against ExxonMobil Corporation ("Exxon").[9] Plaintiffs allege that Exxon was negligent and seek "all general, legal, equitable and maritime relief available to them."[10]

On November 25, 2016, Defendant, Exxon, filed three motions *in limine* to exclude the testimony of Thomas Fick's proffered experts. In its first motion, Exxon seeks to exclude the testimony of Fick's proffered economic loss expert, Shael Wolfson.[11] Exxon argues Wolfson's "expert opinions are inadmissible because his calculations are not based on Plaintiff's Fick's wages earned at the time of his accident as required by law."[12] Plaintiff Fick opposes this motion.[13]

In its second motion, Exxon seeks to exclude the testimony of Fick's proffered future medical expense expert, Bobby S. Roberts, B.S., M.Ed., regarding neuropsychological, psychological, and weight loss expenses.[14] Exxon argues Roberts' testimony should be excluded because "(1) his opinions are speculative with no foundation and (2) his opinions are unreliable because he is not qualified to give expert medical or psychological opinions."[15] Plaintiff Fick opposes this motion.[16]

In its third motion, Exxon seeks to exclude the testimony of Fick's proffered expert, Andrew S. Nolte, regarding calculation of the cost of repairs to Fick's vessel.[17] Exxon argues Nolte's testimony should be excluded because (1) his opinions are specifically contradicted by the undisputed record evidence in this case and (2) his opinions are

---

[9] R. Doc. 1. The Amended Complaint, filed June 17, 2014, named Gulf South Pipeline Company, L.P. ("Gulf South") as an additional defendant. R. Doc. 10. Plaintiffs filed a motion to dismiss Gulf South, however, on March 12, 2015, which the Court granted. R. Docs. 33, 36.
[10] R. Doc. 149 (Fourth Amended Complaint).
[11] R. Doc. 250.
[12] *Id.* at 1.
[13] R. Doc. 256.
[14] R. Doc. 251.
[15] R. Doc. 251, at 1.
[16] R. Doc. 255.
[17] R. Doc. 252.

2

unreliable because he is not qualified to give expert testimony about pipelines.[18] Plaintiff Fick opposes this motion.[19]

**STANDARD OF LAW**

The Federal Rules of Evidence permit an expert witness with "scientific, technical or other specialized knowledge" to testify if such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," so long as "the testimony is based upon sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case."[20] The threshold inquiry is whether the expert possesses the requisite qualifications to render an opinion on a particular subject matter.[21] If the expert's qualifications are found to be sufficient, the court then must examine whether the expert's opinions are reliable and relevant.[22] The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[23] provides the analytical framework for determining whether expert testimony is admissible under Rule 702. Under *Daubert*, courts, as "gatekeepers," are tasked with making a preliminary assessment of whether the expert's testimony is relevant and reliable.[24]

The party offering the expert opinion must show by a preponderance of the evidence that the expert's testimony is reliable and relevant.[25] The reliability of expert

---

[18] *Id.* at 1.
[19] R. Doc. 254.
[20] FED. R. EVID. 702.
[21] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 799 (E.D. La. 2011). *See also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert to testify if it finds that the witness is not qualified to testify in a particular field or a given subject.").
[22] *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).
[23] 509 U.S. 579 (1993).
[24] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)).
[25] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid."[26] In *Daubert*, the Supreme Court enumerated several non-exclusive factors that courts may consider in evaluating the reliability of expert testimony.[27] "These factors are (1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community."[28]

The Supreme Court has cautioned that the reliability analysis must remain flexible. Various *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[29] Thus, "not every *Daubert* factor will be applicable in every situation . . . and a court has discretion to consider other factors it deems relevant."[30] In sum, the district court is offered broad latitude in making expert testimony determinations.[31]

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility and should be left for the finder of fact.[32] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[33] The Court is not concerned with whether the

---

[26] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). *See also Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).
[27] *Daubert*, 509 U.S. at 592–96.
[28] *Bocanegra*, 320 F.3d at 584–85 (citing *Daubert*, 509 U.S. at 593–94).
[29] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).
[30] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004).
[31] *See, e.g., Kumho Tire*, 526 U.S. at 151–53.
[32] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[33] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596) (internal quotation marks omitted).

opinion is correct, but whether the preponderance of the evidence establishes that the opinion is reliable. "It is the role of the adversarial system, not the court, to highlight weak evidence."[34]

## DISCUSSION

### I. Shael Wolfson

Exxon seeks to exclude the testimony of Plaintiff Thomas Fick's proffered economic loss expert, Shael Wolfson.[35] Exxon argues "Mr. Wolfson's expert opinions are inadmissible because his calculations are not based on Fick's wages earned at the time of his accident as required by law."[36] Exxon points out that Wolfson's calculations are based on Fick's earnings from 2014, the year after the alleged injury.[37] According to Exxon, future earnings calculations must be based on a plaintiff's "earnings at the time of his accident which are then run over his work life expectancy."[38] As a result, Exxon argues, "A plaintiff's earnings **after** an accident are irrelevant to this analysis."[39] Based on this belief, Exxon argues the correct earnings base by which Fick's future lost wages should be calculated is his salary from 2013, which the Defendant's expert, John Theriot, calculates as $44,807.[40] Exxon argues, "In light of the flaws in Mr. Wolfson's underlying calculations, his calculations of Fick's lost earnings are inherently unreliable."[41] Because

---

[34] *Primrose*, 382 F.3d at 562.
[35] R. Doc. 250.
[36] R. Doc. 251-1 at 1.
[37] R. Doc. 250-1, at 1-2.
[38] *Id.* at 2.
[39] *Id.* at 2 (emphasis in original).
[40] R. Doc. 250-1, at 1-2. Defendant attaches Fick's w-2 from 2013 which shows net earnings of $37,886.59. *See* R. Doc. 250-2, at 2. As Defendant acknowledges, however, Fick was laid off in September 25, 2013. R. Doc. 250-1, at 1.
[41] R. Doc. 250-1, at 4 (citing *Dart v. Kitchens Bros. Mfg. Co.*, 253 F. App'x 295, 289-99 (5th Cir. 2007)).

Exxon believes Wolfson's opinions are unreliable, it argues his testimony should be excluded from evidence at trial.[42]

The Fifth Circuit has consistently found that "[a]n award for damages cannot stand when the evidence to support it is speculative or purely conjectural."[43] Both parties agree that "calculation of lost income begins with the gross earnings of the injured party at the time of injury."[44] Nevertheless, Fick argues, "This is not the end of the analysis, however, because [the case law] provides that 'the paramount concern of a court awarding damages for lost future earnings is to provide the victim with the sum of money that will, in fact, replace the money that he would have earned.'"[45] Fick argues, "[A] damages award is proper so long as it is based in fact," and Fick's W-2 for the 2014 calendar year clearly indicates "his earnings were, in fact, $91,955."[46]

A plaintiff's salary at the time of injury is not the only factor a court should examine when awarding damages for loss of future wages.[47] As the case law makes clear, courts may hear "evidence about the likelihood that earnings of an injured worker would increase due to personal merit, increased experience and other individual and societal factors.'"[48] As a result, Fick argues, "If such evidence is admissible, Plaintiff Fick's continued **actual** wage earning should absolutely be admissible to show that his earning capacity was higher than in the last full year before his injury."[49]

---

[42] *Id.*
[43] *Martinez*, 481 F. App'x at 949 (quoting *Masinter v. Tenneco Oil Co.*, 929 F.2d 191, 194 (5th Cir. 1991)).
[44] See R. Docs. 250-1, at 2; 256, at 2 (both quoting *Martinez v. Offshore Specialty Fabricators Inc.*, 481 F. App'x 942, 949 (5th Cir. 2012) (citing *Culver v. Slater Boat Co.*, 722 F.2d 114, 117 (5th Cir. 1983)).
[45] R. Doc. 256, at 2 (quoting *Martinez*, 481 F. App'x at 949 (citing *Culver*, 772 F.2d at 120).
[46] *Id.* at 3.
[47] *See* R. Doc. 256, at 4 (quoting *Culver*, 722 F.2d at 122).
[48] R. Doc. 256, at 4 (quoting *Culver*, 722 F.2d at 122).
[49] *Id.* (emphasis in original).

At the pretrial conference, Fick's counsel clarified that Fick is seeking only past lost wages from August 2015 until the trial and that, as a result, Wolfson's calculations for past and future lost wages was properly based on Fick's earnings during 2014 when he made $91,955.[50]

The "flaws" Exxon identifies in Wolfson's analysis are not reasons for the Court to exclude his testimony under *Daubert* and Federal Rule of Evidence 702. Instead, these "flaws" are assumptions properly challenged through vigorous cross-examination and presentation of contrary evidence. As a result, Defendant's motion *in limine* to exclude the testimony of Shael Wolfson[51] is **DENIED**.[52]

## II.     Bobby S. Roberts, B.S., M.Ed.

In its second motion *in limine*, Exxon seeks to exclude the testimony of Fick's proffered expert Bobby S. Roberts, B.S., M.Ed. insofar as he intends to testify regarding neuropsychological, psychological and weight loss expenses.[53] Exxon argues Roberts' testimony should be excluded because (1) his opinions are speculative with no foundation and (2) his opinions are unreliable because he is not qualified to give expert medical or psychological opinions.[54]

Fick hired Roberts as his vocational expert.[55] According to Fick, Roberts is trained and experienced in vocational evaluation and rehabilitation.[56] Exxon does not contest Roberts' qualifications in these areas, but argues his opinions are speculative and without

---

[50] *Id.* at 3. *See also* R. Doc. 256-2 (Thomas Fick's W-2 from 2014 stating he earned $91,955 in 2014).
[51] R. Doc. 250.
[52] It is the Court's understanding that Wolfson will not base his analysis of past or future wage loss on Fick's earnings from shrimping and fishing. If this is not the case, the Court will rule on the admissibility of this testimony at trial.
[53] R. Doc. 251.
[54] *Id.* at 1.
[55] R. Doc. 255, at 1.
[56] *Id.* at 3 (citing R. Doc. 251-3).

7

foundation as they are in areas outside of his expertise.[57] Specifically at issue is Roberts' opinion "Fick will incur significant neuropsychological and psychological expenses in the future, including evaluation by a clinical psychologist, psychotherapy and cognitive rehabilitation."[58] Exxon argues Roberts does not base his opinion "on any finding of any medical professional or psychologist who conclude[d] that Fick's alleged injuries in this case will incur such expenses."[59] Because Roberts is not a medical professional or psychologist, Exxon maintains he is unqualified to render such an opinion and therefore his testimony should be "excluded as unreliable and irrelevant."[60]

At the pretrial conference, counsel for Fick clarified that Roberts will testify only in accord with his September 19, 2016 report and will not testify as to past or future medical needs or expenses. The parties agreed that this clarification resolves Exxon's concerns raised in its motion in limine. Defendant's motion *in limine* to exclude the testimony of Bobby S. Roberts is **DENIED** as moot.

### III. Andrew S. Nolte

Exxon challenges two distinct aspects of the proposed testimony of Fick's proffered expert, Andrew S. Nolte. First, the Defendant challenges Nolte's damages calculations as specifically contradicted by the undisputed record evidence in this case.[61] Second, the Defendant challenges Nolte's opinions about the size of an oil and gas pipeline allegedly

---

[57] R. Doc. 251-1, at 4 ("As is evidence from Mr. Roberts' CV, he has experience in vocational rehabilitation, but does not have a medical degree, medical training, or training in psychology.").
[58] *Id.*
[59] *Id.*
[60] *Id.* (citing *Rolls-Royce Corp v. Hero, Inc.*, No. CIV.A. 307-CV-0739-D, 2010 WL 184313, at *1 (N.D. Tex. Jan 14, 2010)).
[61] R. Doc. 252-1, at 3-4.

struck by the Plaintiffs as unreliable arguing Nolte is not qualified to give expert testimony about oil and gas pipelines.[62]

### a. Nolte's Calculation of Damages is Admissible

On October 27, 2013, Fick had his vessel repaired by Corbert Rodrigue, the owner and technician of The Boatman LLC, at a cost of $3,956.[63] Rodrique used parts he had on hand to repair the outboard motor, rather than replacing it. On June 23, 2014, Plaintiff's proffered expert, Andrew S. Nolte, examined Fick's vessel and concluded that it would cost an estimated $15,890 to replace the motor completely.[64] The vast majority of the difference between the two estimates is Nolte's finding that the alleged allision caused severe damage to the motor and that the motor should have been replaced as opposed to being repaired.[65] According to the Defendant, Nolte's opinions are "mistaken and baseless," and "therefore irrelevant"[66] because Rodrigue had already performed repairs on the boat and it is evident from the receipt "that no work had to be done on the engine of Fick's vessel."[67]

Plaintiff argues Nolte's calculation is an "estimate of the replacement cost,"[68] and "[a]s with car estimates, there can be variations when you go to different people and get estimates based on used/remanufactured parts and all brand-new parts."[69] In addition, Plaintiff states, Nolte's opinion regarding the "severity of the damage to the lower unit and propeller is not irrelevant simply because Plaintiff Fick mitigated his damages by

---

[62] *Id.* at 6-7.
[63] R. Doc. 252-5, at 8.
[64] R. Doc. 252-2, at 3.
[65] *Id.* Nolte estimates a new outboard motor would cost $14,990.
[66] R. Doc. 252-1, at 6.
[67] *Id.* at 3.
[68] R. Doc. 254, at 2 (quoting R. Doc. 252-2, at 3).
[69] *Id.* at 3.

9

finding someone who he knew and trusted that was able to piece together a rebuilt, remanufactured lower unit to replace the one damaged during the allusion."[70]

The Court finds the issues raised by Defendant with respect to the testimony offered by Fick's expert, Andrew S. Nolte, regarding the extent of damages as a result of the alleged allision, and whether the motor should have been replaced as opposed to repaired, go to the weight and not the admissibility of the evidence and therefore should not be excluded pursuant to Rule 702 of the Federal Rules of Evidence.

### b. Nolte is Qualified To Testify Regarding the Dimensions of the Pipeline

According to his report, after Plaintiff's expert, Andrew S. Nolte, examined the damage to the vessel, Fick and Nolte "took a trip, by boat, out to the site of the accident."[71] In his supplemental report, Nolte states he was "able to reach in the water and touch the submerged pipe during the inspection," adding he "believe[s] the pipe is larger than 2" or 2 ½" pipe and likely a 4" pipe."[72]

Exxon argues because Nolte "is a naval architect, and not an oil and gas professional or land surveyor," he is not qualified to opine about the size of an oil and gas pipeline.[73] As Exxon argues Nolte is unqualified to provide such expert testimony, Exxon maintains Nolte's opinions regarding pipelines in the field should be excluded from evidence at trial.[74] Plaintiff, on the other hand, argues "Nolte does not need to be an expert in oil and gas pipelines to opine on what he saw and touched, which was a submerged pipe."[75] Further, Plaintiff maintains, Nolte, as a marine engineer, likely has experience

---

[70] *Id.* at 2-3 (citing R. Doc. 252-5, at 13:13-22).
[71] R. Doc. 252-2, at 3.
[72] R. Doc. 252-3, at 2.
[73] R. Doc. 252-1, at 6.
[74] *Id.* at 7.
[75] R. Doc. 254, at 3.

with estimating the circumference of a pipe.[76] Plaintiff explains Nolte "offered no opinion as to the origin of the pipe, what once flowed through the pipe or anything that may begin to venture into the area of an oil and gas industry expert."[77]

"The distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'"[78] Rule 701 of the Federal Rules of Evidence allows a non-expert witness to testify in the form of an opinion if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[79] "Personal knowledge can include inferences and opinions, so long as they are grounded in personal observation and experience."[80] Stated differently, "A lay opinion must be the product of reasoning processes familiar to the average person in everyday life."[81]

The Court finds Nolte's proposed testimony regarding the estimated circumference of a submerged pipe he felt upon reaching into the water does not require any expertise, or scientific, technical or other specialized knowledge and is instead rationally based on his own perception. In addition to the extent opining on the size of a pipe requires scientific, technical or specialized knowledge pursuant to Rule 702, Nolte, as a marine engineer, is qualified to render such an opinion.

---

[76] *Id.*
[77] *Id.*
[78] *United States v. Ebron*, 683 F.3d 105, 136-37 (5th Cir. 2012).
[79] FED. R. EVID. 701.
[80] *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999) (citing *United States v. Neal*, 36 F.2d 1190, 1206 (1st Cir. 1994)).
[81] *Id.* (quoting *United States v. Garcia*, 413 F.3d 201, 215 (2d. Cir. 2005)).

11

Defendant's motion *in limine* to exclude the testimony of Andrew S. Nolte is **DENIED**.

**New Orleans, Louisiana, this 9th day of December, 2016.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**